## CARMONA ET AL. *v.* CUESTA.

APPEAL from the District Court of San Juan.

No. 597.—Decided March 29, 1912.

THIRD PARTIES—KNOWLEDGE OF LIENS EXISTING ON PROPERTY.—According to the Mortgage Law persons who have not participated in the contract recorded are considered as third parties. No one can be considered as a third person who although not having taken part in the instrument recorded had knowledge of the encumbrances and liens existing upon the property at the time of the acquisition of the same.

ID.—NULLITY OF DOMINION TITLE PROCEEDINGS.—Persons who have taken part in the prosecution of dominion title proceedings cannot contest the nullity of said proceedings as third parties.

PRESCRIPTION—DOMINION—GOOD FAITH AND JUST TITLE.—A person acquiring property by purchase from the executor of the deceased owner by a deed of bargain and sale executed in part by minors without the necessary formalities of law cannot invoke the ordinary term of prescription of good faith and just title for the period of 10 years as a foundation for his dominion title.

THIRD PARTIES—PROCEEDINGS TO ESTABLISH DOMINION TITLE—CANCELLATION OF RECORD,—The nullity of dominion title proceedings cannot affect third parties who acquired their rights from persons who appear of record to have the right to execute the contracts referred to in the deeds whose nullity and consequent cancellation are the objects of the suit.

ID.—DOMINION TITLE PROCEEDINGS.—The nullity of dominion title proceedings for reasons which appear neither in the registry nor in the proceedings cannot affect a person who acquired under said proceedings previously approved, his purchase having been recorded in the registry after said proceedings had already been recorded, even though said proceedings were not on record at the time the deed of purchase was executed.

RECORDED TITLE—RECORDED SUBSEQUENT TITLE.—In order that a recorded title may invalidate to the prejudice of an innocent third party another subsequent title also recorded it is necessary that the record of the former should be prior to that of the latter inasmuch as it would be an absurdity to hold that an older title unrecorded at the time of recording a later title could annul or prejudice the later title when the existence of the older title does not appear nor could be established from the registry.

The facts are stated in the opinion.

*Mr. José L. Pesquera* for appellant.

*Messrs. Jorge V. Domínguez, H. H. Scoville* and *J. H. Brown* for respondents.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the court.

The complaint which was the foundation of this action and which was filed in the District Court of San Juan on December 16, 1909, after alleging the facts which the plaintiffs, Manuel de Jesús, Juan Antonio, Rafael Carmona Ríos, and Amalia del Pilar Martínez y Domínguez, saw fit to state in support of their rights, concluded with the prayer that judgment be rendered by which it should be declared and decreed: (*a*) That the plaintiffs are the lawful owners of a rural property of 40 *cuerdas,* situated in *barrio* Mucarabones in the municipality of Toa Alta, as described in the complaint; (*b*) that the proceedings instituted by the defendant, José Cuesta Viyeyas, to establish his dominion title to a rural property of 50 *cuerdas* in *barrio* Mucarabones in the municipality of Toa Alta, including in said property the other estate of 40 *cuerdas* above mentioned, and which proceedings were approved by a judicial decision of August 30, 1905, are void and that the record thereof in the Registry of Property of San Juan should be canceled; (*c*) that the deed of December 8, 1905, by which the defendant, José Cuesta Viyeyas, sold said property of 50 *cuerdas* to the codefendant, Domingo Soldini, is also void, and the record of said sale made in the registry of property should be canceled accordingly; (*d*) that the deed of sale and mortgage of said property of 50 *cuerdas* executed on October 12, 1906, between the codefendants, Domingo Soldini and Miss Mary Leitch, is also void, and the record thereof made in the registry of property should, therefore, be canceled; (*e*) that the defendants be adjudged to pay the costs and reasonable expenses caused by the suit, including plaintiff's attorney's fees.

The defendants, José Cuesta Viyeyas and Domingo Soldini, in their answer to the complaint prayed judgment in their favor, with costs to the plaintiff; and the same prayer

was made by the defendant, Miss Mary Leitch, with the further request that in case judgment should be rendered in favor of the plaintiffs Domingo Soldini and José Cuesta Viyeyas should be adjudged to pay Miss Mary Leitch the value of the lands and the improvements thereon, with attorney's fees and costs.

The trial having been set for March 16, 1910, after the introduction of evidence by the plaintiffs, the defendants made a verbal motion for judgment in their favor and against the plaintiff, and the court, by judgment of the 21st of the same month, denied the prayers of the complaint without any special imposition of costs, from which judgment the plaintiffs took the present appeal to this Supreme Court.

From the allegations made by the parties and from the evidence introduced at the trial it appears:

"1. That by public deed of August 27, 1870, Juan Bonifacio Carmona acquired from Nemesio Rodríguez a rural property of 40 *cuerdas,* more or less, situated in *barrio* Mucarabones in the municipality of Toa Alta, with the following boundaries: 'Beginning at a *jobo* tree and running in a straight line bordering on property of José María Narváez up to another *jobo* tree on the margin of the Salada Brook, following its course upwards through its windings and bordering on lands of Manuel Carmona up to its junction with another brook; thence in a straight line bordering on lands of Merced Santiago, or of the Toa Baja church, up to a mulberry tree; thence in a straight line bordering on lands of Ezequiel Rosado up to an *aguacate* tree; thence in a straight line to a stump of a *capá blanco* tree bordering on lands of José María Estrada; thence in a straight line bordering on lands of José Montañez to an *abey* or hardwood tree; thence bordering on the same and in a straight line to the original point, where the boundary line ends.' Said deed was recorded in the registry of property on February 25, 1909.

"2. That by a nuncupative will executed by Juan Carmona on October 12, 1887, he declared that he had been married the first time to Florentina Ríos, by which marriage they had three children named Manuel, Juan Antonio, and Rafael, and a second time to Carlota Domínguez, by whom he has not had any issue, although she was in the family way; that when he was married the second time he pos-

sessed among other properties one in *barrio* Mucarabones in the municipality of Toa Alta; that he instituted as his heirs his three children had by the first marriage and the posthumous one which might be born to the second, and he appointed testamentary executor of his will, in the first place, Manuel Valdés. By virtue of said testament and other documents presented to the registry, a half interest in said property of 40 *cuerdas* was recorded in favor of Manuel, Juan Antonio, Rafael Carmona y Ríos, and José Dolores Carmona y Dominguez on November 16, 1909.

''3. That the District Court of San Juan designated as heirs intestate of Florentina Ríos y Nater her children, Manuel de Jesús, Juan Antonio, and Rafael Carmona y Ríos, by order of November 26, 1909, and by another order of the same date designated as heir intestate of José Dolores Carmona y Domínguez, her mother, Carlota Domínguez y Nieves, both orders being recorded in the registry of property; another order was made, its date not appearing herein, by which the same court designated as heir intestate of Carlota Domínguez y Nieves her niece, Amalia del Pilar Martínez y Domínguez, one of the plaintiffs herein, which last order, up to the date of the trial, had not been recorded in the registry.

''4. That José Cuesta Viyeyas, by petition dated April 13, 1905, instituted proceedings before the District Court of San Juan to establish his dominion title to two rural properties, one located in *barrio* Mucarabones in the municipality of Toa Alta, composed of 50 *cuerdas,* bounded on the north by lands of Antonio Soler y Serrano; on the south by lands of Juan Montañez and B. Y. Murphy; on the east by lands of Charles Tilbrick, represented by Mr. Norton; and on the west by lands of Francisca Hernández and José Monserrate Maysonet, which property, as stated by Viyeyas, was purchased by him in the month of July, 1904, from Santiago Olivo, with the consent of the latter's wife, Felipa Rodríguez, Olivo having acquired it by purchase from Prudencio Velilla in 1883, and Velilla, also by purchase from Manuel Valdés, in 1881. The *fiscal,* the adjoining owners, and the former owner, Santiago Olivo, were notified of the proceedings, summonses were published in the newspapers, three witnesses testified, and after all the proceedings the judge rendered a decision on August 30, 1905, declaring that the dominion title to said property had been established in favor of José Cuesta Viyeyas, and ordering that the proper certificate be issued so that he might record his title in the registry of property.

"5. That by public deed executed on December 8, 1905, José Cuesta Viyeyas sold to Domingo Soldini, for $625, the same property of 50 *cuerdas* which was the object of the dominion title proceedings already referred to, of which sale a cautionary notice was entered in the Registry of Property of San Juan on January 22, 1906, admission to record of said sale having been denied because said property did not appear recorded in favor of the vendor nor of any other person.

"6. That on February 13 following the dominion title to said property in favor of José Cuesta Viyeyas was recorded in the Registry of Property of San Juan with the curable defect that the judicial decision adjudging said dominion title did not state whether the petitioner was married or single nor whether the former owner had been summoned, and on the same date the cautionary notice entered on January 22, 1906, was converted into a final record of ownership of said property in favor of Soldini.

"7. That by deed of October 12, 1906, Domingo Soldini sold to Miss Mary Leitch the property in question, together with another one, for $2,170, of which sum the vendor acknowledged having previously received $1,000, and for the balance of $1,170, which was to be paid within eight months from the date of the execution of the deed, Miss Mary Leitch constituted a voluntary mortgage upon the property in question. Said deed of sale and mortgage was admitted to record in the registry of property on December 18, 1906, the mortgage being afterwards canceled on May 15, 1909.

"8. That according to oral testimony taken at the trial, upon the death of Juan Bonifacio Carmona which, according to the witness, Rafael Carmona, took place in the year 1887, and according to the witness, Emilio Egozcue, about the year 1887 or 1888, Manuel Valdés took charge of a certain property owned by Juan Bonifacio Carmona in *barrio* Mucarabones, municipality of Toa Alta, which is the same property that was sold by Valdés to Prudencio Velilla and by the latter to Santiago Olivo, and afterwards transferred by deed of sale to the defendants, Cuesta Viyeyas, Domingo Soldini, and Miss Mary Leitch, successively. Velilla admitted that he had purchased the property from Valdés, the latter representing Carmona, who had already died, and a document signed by minors had been drawn, the said Velilla explaining to Santiago Olivo the manner in which he had made the purchase from Valdés."

Having stated the facts proved at the trial, let us now

dwell upon the legal provisions applicable to them in order to come to a decision of this appeal.

In accordance with article 33 of the Mortgage Law, *the record of instruments or contracts which are null in accordance with the law are not validated thereby; and in accordance with the following article, notwithstanding the statements contained in the preceding article, the instruments or contracts executed or covenanted by a person who, according to the registry, has a right thereto shall not be invalidated with regard to third persons after they have once been recorded, although later the right of the grantor is annulled or determined by virtue of a prior deed not recorded, or for reasons which do not clearly appear from the registry; it is further provided in that article that only by virtue of a recorded instrument may another later instrument, also recorded, be invalidated to the prejudice of third persons, with the exceptions mentioned in article 389, nor may the provisions of article 34 at any time be applied to the instrument recorded in accordance with the provisions of article 390, unless the prescription has validated and secured the interest referred to therein.*

. Article 389, cited above, *establishes the necessity of recording in the registry of property all instruments concerning property rights, without which requisite they are not admissible as evidence before any court, council, or government, or governmental office, if the object of the presentation be to enforce to the prejudice of third persons the interest which should have been recorded, unless the object of the presentation be only to corroborate another subsequent instrument already recorded, or to demand a declaration of nullity and consequent cancellation of some entry which prevents the record of said document.*

Article 390 refers to titles acquired by proceedings to establish possession the record of which, according to the provisions of article 392, *is made without prejudice to a third person having a better claim.*

Article 36 of the same Mortgage Law provides that *suits*

*for rescission or determination of title shall not be instituted against third persons who have recorded the instruments of their respective interests in conformity with the provisions of this law,* which rule is subject to the exceptions prescribed by article 37, *among which exceptions are included suits for rescission or determination of title which are due to the causes plainly expressed in the registry;* and the last paragraph of article 38 provides that *where the suit for rescission or determination of title cannot be instituted against the third person, in accordance with the provisions of said article, the corresponding personal action may be brought to recover indemnity for the injuries and damages suffered from the person who may have been the cause thereof.*

For the purposes of the Mortgage Law, according to article 27 thereof, those who have not participated in the recorded instrument or contract shall be considered as third persons. And no one can be considered as a third person who although not having taken part in the instrument or deed recorded, had knowledge at the time of the acquisition of the property, or prior to that act, of the encumbrances and liens existing upon the property, according to the decisions of the Supreme Court of Spain of October 8, 1885, January 11, 1895, and February 7, 1896, reaffirmed by the Supreme Court of Porto Rico in its decisions of December 30, 1899, and June 30, 1906. *Decisiones de Puerto Rico,* vol. 1, p. 75; 11 P. R. R., 275.

Now, then, one of the prayers of the complaint is that the proceedings to establish the dominion title to the property of 50 *cuerdas,* approved August 30, 1905, of which property the plaintiffs claim to be owners, be adjudged null and void, and that the record thereof made in the registry of property be canceled.

Juan Cuesta Viyeyas took part in the prosecution of those proceedings to try title now recorded in the registry of property, and in accordance with article 27 of the Mortgage Law he cannot claim to be a third party. Said property of 50

*cuerdas* had not yet been recorded in the registry of property when Viyeyas acquired it from Santiago Olivo, and therefore to sustain the validity of his title he cannot allege that he acquired from a person whose right to dispose of it appears from the registry.

The said proceedings to establish ownership are substantially void, although the external formalities required by the Mortgage Law for their prosecution had been complied with and the former owner summoned, for although it appears therefrom that Cuesta Viyeyas acquired the property in 1904 by purchase from Santiago Olivo, who purchased it from Prudencio Velilla in 1883, and Velilla from Manuel Valdés in 1881, inasmuch as Valdés knew that said property did not belong to him but to Carmona or his heirs, and as Velilla testified that he had purchased the property from Valdés as the representative of Juan Carmona, who was already dead, which representation could not be claimed by Valdés as executor of Carmona, and as the said Velilla testified that he had informed Santiago Olivo of the manner in which he purchased said property from Valdés—that is, through a document signed by minors—it is evident that Cuesta Viyeyas cannot invoke in the present case the ordinary term of prescription as a foundation of his dominion title, because although he may have purchased it from Olivo in good faith and with good title, his possession runs from 1904, and the possession held by his predecessors cannot be added to his to complete the period of 10 years, but only to make up the period of 30 years required by section 1860 of the Civil Code to complete the extraordinary term of prescription, which time, as clearly appears in this case, has not run out. The elements of good faith and good title required for the ordinary term of prescription cannot be invoked in favor of the predecessors of Cuesta Viyeyas.

And referring to the nullity of the proceedings to establish a dominion title, we must state that in view of the fact that Juan Bonifacio Carmona executed his will on October

12, 1887, and died that year or the year following possessed of said property, Manuel Valdés could not, as an executor appointed in said will, sell the property in question to Velilla in 1881, nor could the latter convey it to Olivo in 1883, as alleged by Cuesta Viyeyas in the initial motion for the proceedings to establish his dominion title and which were approved in his favor. Such sales must necessarily have taken place subsequently to the death of Carmona.

Now, then, the proceedings instituted by Cuesta Viyeyas to establish his dominion title being null and void, can the record thereof made in the Registry of Property of San Juan be canceled? Our answer to that question must be in the negative. The nullity of the dominion title proceedings cannot affect the defendants, Domingo Soldini and Miss Mary Leitch, who acquired their rights from persons who appear of record to be vested with the right to execute the contracts contained in the deeds attacked as void, the record whereof is sought in the complaint to be canceled, nothing appearing from the registry that could vitiate the title of José Cuesta Viyeyas, from whom the two other defendants acquired their title of ownership. Both Soldini and Miss Mary Leitch are protected by the provisions of articles 34 and 36 of the Mortgage Law already quoted.

And it cannot be advanced against Domingo Soldini that when he acquired the property by public deed executed on December 8, 1905, the ownership of said property in favor of Cuesta Viyeyas had not yet been entered of record in the registry of property, and therefore he acquired from a person who did not appear upon the registry as vested with the right to convey the same. Such argument cannot affect Soldini because he acquired with the knowledge that Cuesta Viyeyas was vested with the right to convey the property according to the dominion title proceedings previously approved, and his purchase was recorded in the registry when said dominion title proceedings had already been recorded,

and therefore it appeared from the registry that Cuesta Viye-yas was vested with the right to convey.

Appellant contends that article 34 of the Mortgage Law cannot be invoked either in favor of Soldini or of Miss Mary Leitch, because the provisions of that article refer to the case where the title of the grantor is annulled or determined by virtue of a prior deed not recorded or for reasons which do not clearly appear from the registry. In the case at bar there is a prior title, namely, the deed of August 27, 1870, executed in favor of Juan Bonifacio Carmona, and that title was recorded in the registry on February 25, 1909, subsequently to February 13, 1906, when the declaration of ownership in favor of Cuesta Viyeyas was recorded.

We are of the opinion that for a recorded title to invalidate to the prejudice of an innocent third party another title subsequently recorded, it is necessary that the record of the former should be prior to that of the latter, since it would be an absurdity to hold that an older title unrecorded at the time of recording a later title could annul or prejudice the latter title when the existence of the older title does not appear nor could be established from the registry.

Although we hold that the proceedings to establish ownership approved in favor of Juan Cuesta Viyeyas are void, since the defect of nullity does not clearly appear from the registry and there are innocent third parties, to wit, Domingo Soldini and Miss Mary Leitch, who are *bona fide* purchasers and cannot be affected by said nullity, we think that the record thereof cannot be canceled and that the titles of Domingo Soldini and of Miss Mary Leitch must be left standing, because their cancellation would openly contradict the provisions of the Mortgage Law above cited. This does not prevent the plaintiff from bringing a personal action to recover damages from the person who has caused them.

For these reasons the appeal should be dismissed and the judgment rendered by the District Court of San Juan on March 21, 1910, should be affirmed without prejudice to the

rights of the plaintiff to bring an action for damages against the person who has caused them.

*Affirmed.*

Justices MacLeary and Wolf concurred.

Justices del Toro and Aldrey took no part in the decision of this case.